ELISHA FOSTER *v.* THE STAFFORD NATIONAL BANK.

[In Chancery.]

*Constitutional Law. Statute Authorizing One to Store Water on Another's Land. To Clear Obstructions in River to Float Logs. Public Use. Compensation. Injunction.*

1. The Act of 1874 authorized the orator with others to remove the rocks, flood-wood, &c., from the bed and banks of Willoughby river, from its source at the outlet of Willoughby lake, so as to make it navigable for the running of logs, and to enter upon the bed of the river and its tributaries for that purpose; to make booms; to occupy land on the margin of the stream for the purpose of banking logs, by paying or tendering all damages. It was provided that if the parties could not agree upon the amount of damages they were to be fixed by the selectmen; and if they were disqualified, then by three justices of the peace. No appeal was allowed, and no fund was provided, or security required, for payment of damages; but an action was given to recover them. This statute was amended by an Act in 1878, which authorized the orator "to make, maintain, and control gates at the outlet of said Willoughby lake, for the purpose of saving water in said lake," &c., but could not raise the level of the waters above the ordinary high-water mark. The amendment contained no provision as to damages. The orator erected the gates on defendant's land, and brought this bill to restrain it from removing them. No compensation was made or tendered; *Held*, that the statutes were unconstitutional, in that no adequate provision was made for compensation; that the rights under an award or judgment are not sufficient for the taking of private property; that there was a taking of defendant's property; and that compensation should have been made at the time of the taking.
2. Not decided whether the taking was for a public use.
3. CONSTRUCTION OF STATUTES. The act of 1878 is not subject to the Act of 1874 as to payment of damages.

BILL IN CHANCERY. Heard on demurrer to the bill, September Term, 1883, Orleans County, Ross, Chancellor. The chancellor stated, that his opinion was, that the bill could not be sustained; but that the constitutionality of the acts of the legislature might be passed upon by the Supreme

Court,—and that the injunction might remain in force during the pendency of proceedings in court, he ruled *pro forma* sustaining the bill.

The bill set forth the claimed rights of the orator and his associate, Evans, under the acts of 1874 and 1878, and alleged that Evans declined to go on with the work and yielded up his rights to the orator; that the orator made the improvements in the bed and banks of the river, constructed the gates at the outlet of said lake "to regulate the flow of water in said river"; that he expended $1500 in said work; that all persons had had the right to use the river for floating logs, without hindrance by the orator; that the orator owned a saw-mill at Evansville, was largely engaged in the manufacturing of lumber, was the owner of large tracts of woodland near the said river and lake, and that he floated the lumber down to his mill, &c.

*Belden & Ide* and *Stafford*, for the defendant.

The orator entered upon the defendant's land, constructed gates, raised the water of the lake upon the defendant's land, claims to exercise exclusive control of the gates,— and this without consent or compensation. Where real estate is actually invaded by superinduced additions of water, earth, sand, &c., so as to impair its usefulness, it is a taking within the meaning of the constitution. *Pumpelly* v. *Green Bay Co.* 13 Wall. 181. Judge COOLEY says—Con. Lim. p. 544—that any injury to the property of an individual, which deprives the owner of the ordinary use of it, is equivalent to a taking, and entitles him to compensation. 30 Mich. 321; *Morgan* v. *King,* 35 N. Y. 561. There is no provision for compensation in the Act of 1878. This renders it clearly unconstitutional. 2 Kent Com. 339; SHAW, Ch. J., in *Thetcher* v. *Dartmouth Bridge Co.,* 18 Pick. 501; *Stevens* v. *Middlesex Canal Co.* 12 Mass. 466; *Gardner* v. *Newburgh,* 12 Johns. Ch. 162; *Sinickson* v. *Johnson,* 2 Harr. (N. J.) 129; Cooley Con. Lim. 562; Gould Waters, s. 250. It is not com-

petent to deprive the owner of his property and turn him over to an action of law. Gould Waters, s. 244; *Newell* v. *Smith*, 15 Wis. 101; *Ash* v. *Cummings*, 50 N. H. 613; *Walther* v. *Warner*, 25 Mo. 277; *R. R. Co.* v. *Paine*, 37 Miss. 700; *Henry* v. *R. R. Co.* 10 Iowa, 540. If compensation has not been made, a Court of Chancery will restrain a party who seeks to occupy the land of another by virtue of eminent domain. *Kendall* v. *R. R. Co.* 55 Vt. 439; *Bugbee* v. *R. R. Co.* 56 Vt. 96. But the taking was not for a public use. *People* v. *Platt*, 17 Johns. 210; *Rhodes* v. *Oli*, 33 Ala. 578; *Weathersfield* v. *Humphrey*, 20 Conn. 227; *Groton* v. *Hurlbutt*, 22 Conn. 185; *Hubbard* v. *Bill*, 54 Ill. 110; *Rowe* v. *Bridge Co.* 21 Pick. 347; Gould Waters, s. 54; *Tyler* v. *Beacher*, 44 Vt. 648; *Coster* v. *Tide Water Co.* 18 N. J. 54; COOLEY, J., in *Ryerson* v. *Brown*, 35 Mich. 333; *People* v. *Pittsburg*, 53 Cal. 694.

*B. F. D. Carpenter* and *O. H. Austin*, for the orator.

A court of equity has jurisdiction. 2 Story Eq. p. 924. The orator was entitled to an injunction. 3 Wait Act. & Def. 695. It will be granted to secure a franchise. 2 Story Eq. 927. The orator stands upon a right or franchise conferred upon and accepted by him, by two enactments of the legislature. It is evident that the legislature intended to confer a right, both private and public. It is presumed that the acts are constitutional. *Bennington* v. *Park*, 50 Vt. 178. The use was a public one; and there is a sufficient provision for the payment of damages. *Wolcott Woolen Manf. Co.* v. *Upham*, 5 Pick. 292; *Burnham* v. *Story*, 3 Allen, 378. Whenever a stream is in its nature capable of being used for the purposes of floating logs, &c., a public easement exists therein. In such a case the owner of the soil can use it in all modes not inconsistent with the public right. *Tyler* v. *Beacher*, 44 Vt. 648. As in the case of railroads, all persons have the right to use this stream upon payment of a common charge,—either such a charge as those persons consent

to pay, or such as the tribunal provided by the act shall fix. 11 Pet. 420; 2 Mich. 427; 3 Paige, 73; *Williams* v. *School Dist.* 33 Vt. 271; 9 Barb. 350; 19 Barb. 166. Actual compensation need not precede the appropriation. *Smith* v. *Helmer*, 7 Barb. 416; *Pittsburgh* v. *Scott*, 1 Pa. St. 309; *Cashman* v. *Smith*, 34 Me. 247. From the length of time since the commencement of the use, it is presumed that compensation was made. Cooley Con. Lim. 562.

The opinion of the court was delivered by

ROYCE, Ch. J. This was a bill in equity brought for the purpose of restraining the defendant by injunction from intermeddling, interfering with, or removing certain gates, which had been erected by the orator upon the land of the defendant at the outlet of Willoughby lake, for the purpose of storing water in said lake to be used as occasion might require to increase the flow of water in Willoughby river, so that logs and other lumber might be floated down said stream; and was heard on general demurrer to the bill.

The right of the orator to enter upon the land of the defendant and erect and maintain said gates is attempted to be justified under acts of the legislature, passed in 1874 and 1878. The Act of 1874, No. 181, entitled "An Act to authorize the removal of obstructions from Willoughby river," by the 1st section, conferred the right upon the orator, and such others as might be associated with him, to clear out obstructions in the bed of said river, and upon its banks, from its source at Willoughby lake to Evansville, in the town of Brownington, so as to make it navigable for the running of logs and lumber, and to enter upon the bed of said river and its tributaries for that purpose, by paying or tendering all damages caused thereby in the manner stated in the 3d section of said act. It was provided by said 3d section that in case the parties could not agree upon the amount to be paid to any person sustaining *such damage*,

the amount was to be fixed by the selectmen of the town in which the property is situated; and if the selectmen were disqualified, they were to be fixed by three justices of the peace in the county of Orleans. No appeal was allowed from the decision of the selectmen or justices, and no fund was provided, or security required, for the payment of the damages that might so be found to have been sustained.

The Act of 1878, No. 214, entitled an Act to amend the Act of 1874, amended said act by adding thereto the following words: "And they, the said Foster and Evans, are hereby authorized and empowered to make, maintain, and control gates at the outlet of Willoughby lake for the purpose of saving the water in said lake, but shall not have power to raise the level of the waters in said lake above the ordinary high-water mark of the last fifteen years." It is by virtue of that amendment that the orator claims the right to erect and maintain said gates. No such right was conferred by the Act of 1874; and unless it is given by the amendment of 1878 the orator fails to show any right that he can ask the aid of a court of equity to protect him in the enjoyment of.

No provision is made in the amendment for the ascertainment and payment of the damages that might be occasioned by the entry upon and occupation of the land of the defendant for the erection and maintenance of gates thereon, and the raising of the waters of the lake. It is claimed that the amendment is subject to the provisions of the Act of 1874;—but that act made no provision for the ascertainment and payment of damage for *such* acts as the orator was authorized to do under the Act of 1878.

Article 2 of the State Constitution provides that: "Private property ought to be subservient to public uses when necessity requires it; nevertheless, when any person's property is taken for the use of the public, the owner ought to receive an equivalent in money." And in Article 5 of the Constitution of the United States, it is said, "Nor shall

private property be taken for public use without just compensation."

The Constitution limits the right to take private property to cases where necessity requires it for a public use; and then it can only be taken on making just compensation to the owner. In all grants of power conferred by the legislature upon corporations or individuals to appropriate the property of citizens, the right has been based upon an existing necessity for a public use, and careful provision has been made for compensation; and any legislative act authorizing such an appropriation when such a necessity does not exist, or which does not provide for compensation, is plainly in conflict with the Constitution. Gould Waters, s. 250, and cases there cited.

The compensation must be made at the time of the taking, or some certain security must be given, or fund provided for its ultimate payment. A party whose property has thus been taken cannot be divested of it upon the security that an award or judgment may furnish him alone. In this case no compensation was made or tendered, and no adequate method was provided by which the damages could be ascertained, or security provided for their ultimate payment.

It is claimed that there was no such taking of the property of the defendant as entitled him to compensation. Any injury to the property of an individual which deprives him of the ordinary use of it, is equivalent to a taking, and entitles him to compensation. Cooley Con. Lim. 544. A right of entry upon land for the purpose of the erection and maintenance of gates upon it, and the flowage of land between high and low water mark, is a legal injury to the proprietor, and necessarily deprives him of the ordinary and beneficial use of it. In *Newell* v. *Smith*, 15 Wis. 101, it was decided that an act of the legislature authorizing proprietors of a mill-dam to flow lands of other persons, without any provision for compensation except that they should pay the land owners the value of the lands, to be ascer-

tained by the verdict in an action of trespass, was in violation of that section of the Constitution which forbids the taking of private property for public use without making compensation therefor. In the *Grand Rapids Booming Co.* v. *Jarvis*, 8 Mich. 308, it was held that the flowing of lands without the owner's consent was, in legal effect, such a taking of his property as violates the constitutional prohibition of the taking of private property without compensation; in *Henry* v. *Dubuque R. R. Co.* 10 Iowa, 540, that the legislature had no power to authorize the taking of property for the use of a railroad before compensation made to the owner, or secured to be made when the amount thereof shall be ascertained.

We entertain no doubt, but that upon the facts stated in the bill, there was such a taking of the property of the defendant as entitled him to compensation.

We have not deemed it necessary to decide whether, upon the facts stated, the use for which the orator was authorized to appropriate the property, was a public use or not; as the failure to make compensation or to give such security for its payment as the law requires, rendered the act unconstitutional.

The decree of the Court of Chancery is reversed, and cause remanded, with a mandate that the bill be dismissed with costs.