ROCH LEMIEUX *v.* CITY OF ST. ALBANS.

May Term, 1942.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 6, 1942.

*Maxwell L. Baton* and *James E. Knapp* for the plaintiff.

*P. C. Warner* for the defendant.

JEFFORDS, J. The plaintiff, a member of the Civilian Conservation Corps, was engaged on June 9, 1939, on work in a pit from which many trucks were drawing dirt. Most of the trucks were delivering to a C. C. C. project at St. Albans Bay. In addition to the so-called C. C. C. trucks there were two others one of which while backing ran over and injured the plaintiff. The plaintiff claimed that the driver of this truck was a servant of the defendant at the time and that the accident resulted from his negligence. There was a trial by jury resulting in a verdict and judgment for the plaintiff and the case is here on defendant's exceptions one of which is based on the refusal of the Court to grant its motion for a directed verdict. One ground for this motion was, in effect, that the defendant was using the truck and driver in question in the performance of a governmental function and consequently cannot be held liable on the ground of *respondeat superior*. We will first consider this question; for if decided in favor of the defendant all of its other exceptions become immaterial.

From the evidence taken in the light most favorable to the plaintiff it clearly appears that the defendant was constructing a public playground for children on the property in which the pit was located. The truck at the time of the accident was engaged in drawing dirt from the pit so as to clean or level it and thus make it a suitable portion of the playground. The fill was being taken gratuitously by this truck to a place where the State was building a garage for national guard trucks.

We are thus called upon to determine whether the construction of the public playground is the performance of a governmental or corporate function by a municipal corporation of this State. This is a question of first impression with us. The cases

from other jurisdictions are conflicting. It appears that the majority hold that such work is governmental in its nature while the minority take the opposite view. It is stated in McQuillin, Municipal Corporations, second ed., revised, sec. 2793 that: "While there are cases to the contrary, it is generally held that the construction, improvement, or maintenance of a public park, camp or playground is the exercise of a governmental function and no liability attaches for the negligence of its officers or employees engaged in such work." This author in section 2850 of his work sets forth the divergence of opinion relating to the question of liability of cities arising from the maintenance of public parks. See also Dillon on Municipal Corporations, 5th ed., sec. 1659, and annotations in 29 A. L. R. 863 and 42 A. L. R. 263.

It would serve no good purpose to incorporate in this opinion an extensive review of the cases cited by these authors and annotators. Most of them have to do with parks but it is apparent that the same rule is and should be applied to public playgrounds. We do refer specially to *Bolster* v. *Lawrence,* 225 Mass. 387, 114 N. E. 722, 724, L. R. A. 1917 B, 1285. Our reference is prompted because it is recognized as a leading case on this subject and because the opinion written by the late Chief Justice Rugg so well and clearly sets forth the reasons why in our judgment a project such as the one here in question should be classed as a governmental function. It is therein stated "that the underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability, if it is not, there may be liability." That case had to do with an injury to a child in a bath house constructed under statutory authority. It was held that the maintenance of free public baths is in its essence a public benefit because they tend to promote the health of the public. It is stated that such maintenance "belongs to the same class of public service as municipal playgrounds and swimming pools for small children. * * * * It is in its intrinsic characteristics a project for the general good of all the public." See also *Kellar* v. *Los Angeles,* 179 Cal. 605, 178 Pac. 505; *Board of Park Comrs.* v. *Prinz,* 127 Ky. 460, 105 S. W. 948; *Nashville* v. *Burns,* 131 Tenn. 281, 174 S. W. 1111, L. R. A. 1915D, 1108; *Alder* v.

*Salt Lake City,* 64 Utah 568, 231 Pac. 1102; *Nelson* v. *Spokane,* 104 Wash. 219, 176 Pac. 149; *Connors* v. *New Haven,* 101 Conn. 191, 125 Atl. 375; *Warrenton* v. *Smith,* 149 Ga. 567, 101 S. E. 681; *Norman* v. *Chariton,* 201 Ia. 279, 207 N. W. 134; *Blair* v. *Granger,* 24 R. I. 17, 51 Atl. 1042.

But our conclusions are not based entirely on the Bolster and other cases referred to but in part on our own law on this subject. The establishment and maintenance of public playgrounds by municipalities is authorized by P. L. 3701. An examination of our cases having to do with powers conferred upon municipalities either by their charter provisions or by general statutes shows that they have tended toward holding such to be governmental rather than corporate functions. *Welsh* v. *Rutland,* 56 Vt. 228, 48 Am. Rep. 762, is a case frequently referred to on this subject. The defendant by its charter was given the power to establish a fire department. One of the engineers thawed a hydrant with the result that ice accumulated on which the plaintiff slipped and fell. It was held that there was no liability on the ground that the maintenance of the fire department was a governmental function. Many cases are reviewed and the test set forth is whether the benefit from the exercise of the power accrues to the municipality in its corporate capacity or to the public generally. If the former the function is corporate. If the latter it is governmental and there is no liability on the ground of *respondeat superior.* This is in effect the test set forth in the Bolster case and generally in the cases on this subject.

Contrary to the rule in many jurisdictions our common law is that cities and towns are not liable for damages resulting from defects in streets and highways. *Weller* v. *Burlington,* 60 Vt. 28, 12 Atl. 215; *Bates* v. *Rutland,* 62 Vt. 178, 20 Atl. 278, 9 L. R. A. 363, 22 Am. St. Rep. 95; *Sanborn* v. *Enosburg Falls,* 87 Vt. 479, 480, 89 Atl. 746; *Latulippe* v. *Burlington,* 93 Vt. 434, 108 Atl. 425. For other cases which illustrate this tendency and which follow the Welsh case see *Morgan* v. *Stowe,* 92 Vt. 338, 104 Atl. 339, L. R. A. 1918 F, 1000; *Carty's Admr.* v. *Winooski,* 78 Vt. 104, 62 Atl. 45, 2 L. R. A. (N. S.) 95, 6 Ann. Cas. 436; *Stockwell* v. *Rutland,* 75 Vt. 76, 53 Atl. 132.

Consequently, in accordance with the majority view as to such projects and following the principles set forth in our

former cases on this subject we hold that the construction of this playground was the performance of a governmental function on the part of the defendant as the use of the same when completed would be for the public good generally in the way of health benefit.

■ The plaintiff claims that the defendant is estopped from raising this question because he says that the defense of governmental function is an affirmative one so that it must be specially pleaded to be available and that the case was tried below on this theory. An examination of the transcript discloses that the plaintiff did make the claim of affirmative defense during the trial and that the Court was "rather inclined" to agree with him. It also appears that the defendant insisted that it was not but could come in under the general denial. This theory of the plaintiff not being acquiesced in by both parties and by the Court, the case of *Cote* v. *Boise*, 111 Vt. 343, 16 Atl. (2d) 175, cited by the plaintiff is not in point.

■ That this is not an affirmative defense is clearly established by the cases. It is stated in 38 Am. Jr. 372 in sec. 665: "Since the liability of a municipality for its torts in the performance of corporate or private functions is the exception to the general rule of immunity for tort, it behooves the plaintiff who is seeking to impose liability for negligence contrary to the general rule to aver facts sufficient to manifest his right to do so." The text continues to the effect that the burden is on the plaintiff to specifically allege facts showing that the act in question was not committed in a governmental capacity but as a corporate function. See also 43 C. J. 1218, sec. 1991; *Rowley* v. *Cedar Rapids*, 203 Ia. 1245, 212 N. W. 158, 53 A. L. R. 375; *Bowling Green* v. *Bandy*, 208 Ky. 259, 270 S. W. 837; *Tuscaloosa* v. *Fitts*, 209 Ala. 635, 96 So. 771; *Caspary* v. *Portland*, 19 Or. 496, 24 Pac. 1036, 20 Am. St. Rep. 842.

*Judgment reversed, and judgment for the defendant to recover its costs.*